UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21134-CIV-JORDAN/MCALILEY

STEPHEN RAY OPELLA,

    Plaintiff,

v.

MAURICIO ALBERTO RULLAN and
TECNOLOGIAS ASOCIADAS
INTERNACIONALES, S.A. DE C.V.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION ON MOTION TO VACATE AND ORDER ON RELATED MOTIONS

Pending before the Court is Defendant, Mauricio Alberto Rullan Diaz's Motion to Vacate Clerk's Default, Opposition to Plaintiff's Motion to Enter Default Judgment Under Rule 55(B)(2), Motion to Vacate This Court's Order of August 11, 2010.[1] [DE 39]. The matter has been fully briefed and was referred to me by the Honorable Adalberto Jordan. [DE 41, 42, 43, 44, 45, 52, 53, 65, 69, 70, 71, 74, 77]. For the reasons set forth below, I recommend that the Motion be granted and the Court vacate the Clerk's default and the Order filed on August 11, 2010.

**I.  Background**

    **A.  Procedural History**

On April 8, 2010, Ray Opella ("Opella") brought this action against Defendants

---

[1] Also pending are certain related motions [DE 43, 49, 71, 80], that I address below.

Mauricio Alberto Rullan Diaz ("Rullan") and Tecnologias Asociadas Internacionales, S.A. de C.V. ("TAI"), claiming that Rullan engaged in fraud, aiding and abetting fraud, and tortious interference with a contractual relationship, and accusing both Defendants of conversion, civil theft, breach of contract, and unjust enrichment. [DE 1]. Both Defendants were personally served by a Mexican notary republic in Veracruz, Mexico on April 21, 2010.[2] [DE 3, 4, 5, 6].

On May 19, 2010, Rullan's counsel, Alfonso Hernandez, filed a motion to appear pro hac vice in this action, which was denied without prejudice on May 20, 2010. [DE 7, 9]. Mr. Hernandez made no further efforts to appear on behalf of Rullan, and TAI also made no appearance. On June 3, 2010, Opella filed a motion to enforce settlement, asking the Court to find that the parties had reached a settlement agreement, to require Defendants to execute that agreement and to pay Opella the amounts due under the agreement. [DE 16, p. 9]. Defendants did not respond to the motion. On July 22, 2010, the Clerk entered defaults against Rullan and TAI. [DE 21, 22].

On August 11, 2010, the Court granted the motion to enforce the settlement agreement. [DE 23].[3] The Court directed Opella to serve the Order on Defendants and stated: "If the Defendants, following proper service of this order, do not execute the written settlement agreement and/or do not pay Plaintiff the sums, set forth above, Plaintiff may move for a default judgment." [Id.].

---

[2] Service of TAI was made on Lorenzo Mackliff. [DE 5, 6].

[3] That order in fact was signed on August 10, 2010, but filed the following day.

On August 27, 2010, Opella moved for entry of a default judgment against both Defendants, based on their failure to comply with the August 11 Order. [DE 24]. In response, Rullan, represented by new counsel, filed the pending Motion asking this court to vacate both the Clerk's default and the August 11, 2010 Order, and to decline to enter a default judgment. Rullan makes several arguments in support of his Motion. First, he asserts that the initial service of process on him in April 2010, was insufficient under Federal Rule of Civil Procedure 4, and thus the Court does not have personal jurisdiction over him. [DE 39, pp. 3- 4]. Next, Rullan argues that, consistent with Federal Rule of Civil Procedure 55, he has shown good cause to vacate the clerk's default. [*Id.* at pp. 4-7]. Finally, Rullan asks the Court to vacate the August 11 Order, both due to the improper service on him and because Opella failed to establish the existence of a valid settlement agreement. [*Id.* at 7-10]. The issues raised in the Motion to vacate were extensively briefed by the parties.[4] [DE 41, 42, 43, 44, 45, 52, 53, 65, 69, 70, 71, 74, 77].

Initially, Judge Jordan referred to me both Opella's motion for entry of a default judgment and Rullan's motion to vacate the default, so that I could hold an evidentiary hearing and issue a report and recommendation. [DE 65]. Judge Jordan thereafter issued an order denying Opella's motion for default judgment without prejudice and directing me to address the merits of the motion for default judgment if I recommend that the motion to

---

[4] In briefing these issues, the parties repeatedly filed motions to strike the opposing party's motions, rather than simply filing a memorandum in opposition. [*See, e.g.,* DE 41, 43, 46]. This practice does not advance the issues, rather it only complicates the docket. I deny the one remaining motion to strike, DE 43, and treat it as an opposition memorandum.

vacate be denied. [DE 79].

### B.    The Evidentiary Hearing

I held an evidentiary hearing on January 21, 2011. [DE 75, 78]. At the hearing, the parties agreed that if the initial service on Rullan was not proper, then both the Clerk's default and the August 11 Order enforcing the settlement against Rullan would have to be vacated (and, of course, the Court would not enter a final default judgment against Rullan, as requested by Opella), because the Court lacks jurisdiction over Rullan. [DE 75, p. 13]. Given the threshold importance of this issue, I chose to receive evidence on that issue first, and only if I found that service was proper, would I then hear testimony on the remaining issues. As it turns out, I conclude that Rullan was not properly served. Accordingly, I summarize here the testimony relevant to the issue of the service on Rullan.

Rullan was the first of three witnesses to testify. He was born in Monterrey, Mexico and resides at 201 Popocatepetl, Torreon, Mexico. [DE 75, p. 25]. His home is owned by a company owned by members of his wife's family. [*Id.* at p. 32]. Rullan introduced into evidence his voter credentials [*Id.* at pp. 29-30, Ex. 2], drivers' license [*Id.* at pp. 30-31, Ex. 3], the property tax receipt for his residence [*Id.* at pp. 32-33], the electric bill for his residence [*Id.* at p. 33, Ex. 5], and telephone bills [*Id.* at p. 34, Ex. 6], each showing the address in Torreon, and all but one of which are in his name.[5]

In August 2007, Rullan invested in TAI, which is located in Veracruz, Mexico, and

---

[5] Rullan testified that his drivers' license showed the address of the cross street on which his residence is located, but that address is, in fact, for his residence. [DE 75, p. 31].

the share certificate issued to him by TAI bears his address in Torreon. [*Id.* at p. 28; Ex. 1]. Rullan testified that in February 2008, Marcella Opella, Plaintiff Opella's wife, contacted him on behalf of TAI and asked for his address, so she could send him shareholder documents. Rullan gave Ms. Opella his Torreon address and the documents were delivered to him there. [*Id.* at pp. 41-3, 47-8]. Rullan met Ms. Opella when he toured the TAI offices in Veracruz and he had lunch with Plaintiff Opella in Xalapa, where Rullan used to reside. [DE 78, pp. 26-8].[6]

Rullan also testified that since the summer of 2009, his wife and two children have resided in Austin, Texas, where his wife has undergone treatment for breast cancer. Although Rullan traveled to Austin frequently, he did not move there because he was working in Torreon. [DE 75, p. 52-4].

On April 21, 2010, Rullan was at the Fiesta Americana Hotel in Veracruz, Mexico to meet Opella and Lorenzo Mackliff to discuss the status of TAI. Opella had communicated with Rullan to schedule the meeting. [*Id.* at p. 55]. While Rullan was in the parking lot of the hotel, a privately retained notary public served him with the complaint in this action. [*Id.* at 56]. On the same day, he received an email from Opella's counsel about the lawsuit. [*Id.* at 57; Ex. 17].

Mr. Hernandez, a Texas attorney initially retained by Rullan to file a special appearance in this action, testified next. Mr. Hernandez was questioned about a notice of

---

[6] Opella introduced an email from Rullan to Marcella Opella stating: ". . . I have no intention to change voter's credentials, even thought I still keep the one with my Xalapa address in case I need it." [*Id.* at p. 28].

special appearance that he had prepared to file in this action on Rullan's behalf, which stated that Rullan resided in Texas. Hernandez believes he wrote this because the attorney who referred Rullan to Hernandez had told him that Rullan lived in Texas. Hernandez emailed the draft notice of appearance to Rullan, who responded that he was not a Texas resident. Mr. Hernandez never met Rullan, and only communicated with him by telephone or email. [*See* DE 78, pp. 34-37; Ex. 19].

Plaintiff Opella was the last to testify. Before April 21, 2010, the date Rullan and TAI were served in Mexico, Opella conducted Internet searches that led him to an address for Rullan in Austin, Texas. [*Id.* at p. 39]. Opella testified that he and his wife were employed by TAI. His wife acted as a liaison between the legal representative, Lorenzo Mackliff, also her uncle, and the accounting people. [*Id.* at pp. 45, 46, 52]. According to Opella, the TAI corporate records were available only to Mackliff. [*Id.* at p. 46]. Opella testified that his wife never told him the address Rullan had provided to her. [*Id.* at pp. 46-47]. However, he admitted that Rullan had told him that Rullan "worked for his father-in-law in Torreon, and I believe it was a car dealership." [*Id.* at p. 47].

In addition to the Internet searches, Opella personally performed a search for property owned by Rullan in the State of Veracruz and its capital, Xalapa, but did not make such a search of Torreon. [DE 78, pp. 50-1, 58-9].[7] Opella did not personally check the voter registration records of Mexico, the drivers' license registration records or the utility company

---

[7] Opella testified that he also hired a Mexican attorney to search for Rullan, but he did not present any admissible evidence concerning the details of that attorney's search.

records in an effort to locate Rullan. [*Id.* at pp. 60-1]. On cross-examination of Opella, Rullan's counsel presented Opella with an email dated July 16, 2009, purportedly from Opella to Rullan, asking whether he was in Austin, Texas or Torreon, Mexico." [DE 78, p. 63; Ex. 26].[8] Opella denied that he sent that email, or that the sender's email address, which includes his name, was in fact his. Rullan testified that he received the email, and that in discussion with Opella, Rullan told him that he lived in Torreon. [*Id.* at pp. 63, 70-1, 77-81]. As a general matter, and certainly on this particular point, I found Rullan's testimony credible.

Opella confirmed that the person who served Rullan and TAI was hired by him to do so, and was not assigned by the Central Authority of Mexico. [*Id.* at 64].

## II. Analysis

Rullan moves to vacate the Clerk's default against him, and the August 11, 2010 Order, on two grounds: (1) the service of the process on him was insufficient under Federal Rule of Civil Procedure 4 and thus, the Court does not have personal jurisdiction over him, and (2) he meets the requirements of Rule 55 to vacate a default because the default was not the result of willful conduct, Opella will not be prejudiced if the default is vacated, and Rullan has meritorious defenses. [DE 39]. I address only the first argument, as I believe the evidence lead to the clear conclusion that Rullan was not properly served. Opella concedes

---

[8] The email reads: "Hi Mauricio, Where are you, Austin or Torreon? Do you have any plans to come to Veracruz? We need to schedule a meeting, no matter where it is. A month has gone by and we have no information. Hope all is well for you and Marcela and I look forward to seeing you soon. Best regards, Steven." *Id.*

that if Rullan was not served as required by Rule 4, then both the Clerk's default and the order enforcing settlement must be vacated. [DE 75, p. 13; 78, pp. 9, 17, 44].

Opella bears the burden of establishing proper service. *Jenkins v. Deutsche Bank Nat'l Trust Co.*, Case No. 07-22463, 2009 U.S. Dist. LEXIS 129921, * 29 (S.D. Fla. Sept. 4, 2009). Insufficient or improper service of process cannot support the entry of a default judgment, even if the defendant has actual notice of the suit. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (affirming dismissal of complaint, finding that "defendant's actual notice is not sufficient to cure defectively executed service."); *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008) ("A district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process, and the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint"); *Emmett v. Lawry's Rest., Inc.*, 51 F.3d 279, 1995 WL 149052, * 4 (9th Cir. 1995) (proper service is necessary for the exercise of personal jurisdiction over a defendant).

A.   **Service on Rullan**

It is undisputed that Rullan was personally served in Veracruz, Mexico by a privately-retained notary public. Because he was served in Mexico, service had to be made in accordance with Federal Rule of Civil Procedure 4(f), which governs service of individuals in a foreign country.[9] That Rule states, in pertinent part:

---

[9] Plaintiff presented evidence that Rullan spent a great deal of time in Austin, Texas, with his wife and two children, in an apparent effort to establish that Rullan actually resided in Texas, not Mexico. Where Rullan resides is irrelevant to determining if Rullan was properly served, because

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

Fed. R. Civ. P. 4(f)(1). "If there is no internationally agreed means, or if an international agreement allows but does not specify other means," Rule 4(f) provides other methods of service that are reasonably calculated to give notice. *See* Fed. R. Civ. P. 4(f)(2),(3).

In this instance, there is an "internationally agreed means of service," within the meaning of Rule 4(f)(1). Both Mexico and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Service Convention"). *Mitchell v. Volkswagon Group of America, Inc.*, No. 1:10-CV-944-TCB, 2010 WL 4910115, * 5. (N.D. Ga. Oct. 4, 2010). The Supreme Court has held that "compliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Article I of the Hague Service Convention provides that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention *shall not apply where the address* of the person to be served with the document *is not known*." 20 U.S.T. 361 *1 (emphasis added).

The only form of service available in Mexico under the Hague Service Convention is through the Central Authority. *Mitchell*, 2010 WL 4910115, * 5-7 (citing *OGM, Inc. v.*

---

Plaintiff served Rullan in Mexico and thus Plaintiff had to comply with the requirements of Rule 4(f), for serving process on an individual in a foreign country.

*Televisa, S.A. de C.V.*, No. CV 08-5742-JFW, 2009 WL 1025971 (C.D. Cal. April 15, 2009)).[10] It is undisputed that Opella used a private notary public, not the Central Authority, to serve Rullan in Mexico. Thus, the service on Rullan did not meet the requirements of the Hague Service Convention for service on an individual in Mexico and, under *Schlunk*, is insufficient to support the exercise of personal jurisdiction over Rullan.

Opella argues, however, that he was exempt from complying with the Hague Service Convention because, citing Article I of the Hague Service Convention, at the time of service Rullan's address was "not known." [DE 41, p. 7]. I am aware of no binding precedent that establishes a standard for determining when a plaintiff "knew" the address of the person to be served, in the context of the exemption in Article 1 of the Hague Service Convention. However, I am persuaded by the reasoning and standard expressed by a California appellate court in *Kott v. Brachport Enter. Corp.*, 45 Cal. App. 4th 1126, 1137-39 (Cal. Ct. App. 1996), and choose to apply it here: an address is not "known" within Article I of the Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address. I conclude that Opella did not establish that he exercised reasonable diligence.

The Court in *Kott* found that the plaintiff did not exercise reasonable diligence when

---

[10] The *Mitchell* Court noted that "[t]he general method of service provided for in the Hague Convention requires Plaintiffs to send documents to Mexico's designated central authority, which then serves the documents according to its own law." *Id.* *5. The Court next noted that Article 10(a) of the Convention provides an exception to this procedure, and allows parties to use the mails for service. *Id.* The Court found that Mexico had objected to that exception, thus precluding service by mails, and leaving service via the Central Authority as the only accepted form of service. *Id.* * 7.

that plaintiff "made no effort whatsoever to locate an address for [defendant] in Canada, despite its knowledge [that defendant] was a Canadian national." 45 Cal. App. 4th at 1138. On those facts, the California court concluded that defendant's address was not "unknown."

In contrast, the court in *BP Products North America, Inc. v. Dagra*, 232 F.R.D. 263 (E.D. Va. 2005), found that the plaintiff fell within the "address unknown" exemption in Article I where: "after plaintiff's numerous attempts to serve defendant at his last two known addresses in Pakistan failed, plaintiffs went so far as to engage the services of an investigative firm in Pakistan. A month of searching through telephone records, utility records, property records, various housing authorities' records, law enforcement records and other personal identifying databases, has failed to reveal defendant's current whereabouts. Plaintiff has explored every option it believes to be feasible to obtain defendant's address, but to no avail." *Id.* at 264. On this record, the court granted that plaintiff's motion for leave to serve process outside of the requirement of the Hague Convention, consistent with Rule 4(f)(3).

Turning to Opella, I conclude that he did not carry his burden to show that Rullan's address was unknown, because Opella did not demonstrate that he made a reasonably diligent effort to determine Rullan's address in Mexico. Importantly, Rullan presented undisputed evidence that during the relevant time he lived openly in Torreon, Mexico. Although the house in Torreon is owned by Rullan's wife's family, Rullan presented compelling evidence - including his driver's license, voter registration card, passport and visa documents - that his address was available in public records. Moreover, the evidence showed that Opella's wife

had access to Rullan's address through TAI (or at minimum, was aware that he resided in Torreon) and that Rullan had told Opella that he lived in Torreon and was employed there at a car dealership owned by his wife's family. The evidence also showed that Opella was in contact with Rullan in April 2010, to arrange the meeting in Veracruz at which Rullan was served. There was no evidence that Rullan was in hiding or evading efforts by Opella to locate him.

In contrast, Opella presented little evidence that he was reasonably diligent in his attempts to ascertain Rullan's address in Mexico. Opella searched unsuccessfully for property owned by Rullan in Veracruz and Xalapa - but did not make such a search in Torreon - when the evidence shows he knew Rullan resided in Torreon. Opella testified that he hired an attorney to search for Rullan in Torreon, but presented no evidence regarding the scope or thoroughness of that search.

Most significantly, even though Opella was in contact with Rullan, there is no evidence that Opella asked Rullan for his address in Mexico. Likewise, while Opella testified that his wife did not give him Rullan's address, there is no evidence that he asked her for the address, or asked her to try to get the address from the TAI records. *See Kott*, 45 Cal. App. 4th at 1138-39 (plaintiff's failure to simply request defendant's address from defendant's attorney and co-defendants indicated that plaintiff did not exercise reasonable diligence in attempting to learn defendant's address).

In sum, Opella has not carried his burden to show that he could not determine Rullan's Mexico address after a reasonably diligent search. Thus, under Rule 4(f)(1), the

requirements of the Hague Service Convention - that service in Mexico be made through the Central Authority - govern the service of process on Rullan in Mexico. Because it is undisputed that Opella did not serve Rullan through the Mexican Central Authority, that service was defective and did not give this Court personal jurisdiction over Rullan. As a result, the Court did not have jurisdiction to issue the Clerk's default and the August 11 Order against Rullan. Based on the foregoing, I recommend that Rullan's motion to vacate the clerk's default and the August 11 Order be granted.[11]

**B.    Service on TAI**

In his motion for entry of a default judgment against Rullan, Opella also asked that default judgment be entered against TAI. [DE 24]. TAI did not respond to that motion and in his order denying that motion without prejudice, Judge Jordan did not make specific reference to TAI. [DE 79]. Opella thereafter moved the Court, again, to enter a default judgment against TAI, noting again that TAI had not opposed Opella's motion. [DE 80]. Opella contends that TAI did not "respond to a properly served Complaint and ignores a duly issued and properly served Summons of a Court" and therefore a default judgment should be entered against TAI. [*Id.* at 3]. Although that pending motion is not before me, it implicates the same service issue raised by Rullan, and I address it here.

TAI was served in Veracruz, Mexico through personal service of the summons and complaint on Lorenzo Mackliff. [DE 5, 6]. Rule 4(h)(2), which controls the service of a

---

[11] For the same reasons, I conclude that Opella's Motion for entry of a default judgment against Rullan was properly denied. [*See* DE 79].

corporation "at a place not within any judicial district of the United States," provides that the corporation must be served: "in any manner prescribed by Rule 4(f) for serving an individual, except by personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Thus, as with Rullan, "compliance with the Convention is mandatory" when serving TAI in Mexico, unless an exception applies. *Schlunk*, 486 U.S. at 705. It is undisputed that Opella did not comply with the requirements of the Hague Service Convention when he used a private notary public, not the Central Authority, to serve TAI.

Opella does not address the issue of service on TAI in his motion for default judgment, but the record before the Court makes it sufficiently clear that Opella could not establish that he did not know TAI's address and thus, was exempt from the requirements of the Hague Service Convention. Both Opella and his wife lived in Veracruz, Mexico, where TAI is located, and both worked at TAI. Given these facts, it is not credible that Opella could not know the address of TAI. Because the initial service of process on TAI did not meet the requirements of the Hague Service Convention, it is insufficient to support the exercise of personal jurisdiction over TAI, and thus this Court can not enter a default judgment against TAI.

### III. Recommendation

Based on the foregoing, I respectfully RECOMMEND that

Defendant, Mauricio Alberto Rullan Diaz' Motion to Vacate Clerk's Default, Opposition to Plaintiff's Motion to Enter Default Judgment Under Rule 55(B)(2), Motion to Vacate This Court's Order of August 11, 2010 [DE 39], be **GRANTED**.

I further RECOMMEND that this Court enter an Order **VACATING** the Clerk's defaults against Rullan and TAI [DE 21, 22], and its Order On Plaintiff's Motion to Enforce Settlement, filed on August 11, 2010 [DE 23].

I further RECOMMEND that Opella's Motion for Relief From Order Pursuant to Rule 60(a) With Regard to This Court's March 16, 2011 Order [DE 80], be **DENIED**.

The parties may file written objections to this Report and Recommendation with the Honorable Adalberto Jordan within **fourteen days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

## IV.  Order

Based on the foregoing,

1. Defendant, Mauricio Alberto Rullan Diaz's Motion to Strike Certain Portions of Plaintiff's Reply, or Alternatively, For Leave to File a Sur-Reply [DE 43] is **DENIED**.

2. Plaintiff's Motion for Enlargment of Time to File Response to Mauricio Alberto Rullan Diaz's Motion to Vacate [DE 49] is **DENIED AS MOOT**.

3. Defendant, Mauricio Alberto Rullan Diaz's Motion to Limit Witness Testimony to the Narrow Issues Referred Pursuant to Court Order of December 14, 2010 [DE

71] is **DENIED AS MOOT**.

RESPECTFULLY RECOMMENDED AND ORDERED in chambers at Miami, Florida this 29th day of June, 2011.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Adalberto Jordan
Counsel of Record